UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
BRIAN RODRIGUEZ,

                        Plaintiff,

     -against-

THE CITY OF NEW YORK, DETECTIVE CHRISTOPHER
CVITKOVIC, Shield No. 2283, Individually and In His Official
Capacity, DETECTIVE JOHN FILSHIE, Tax ID No. 906229,
Individually and In His Official Capacity, DETECTIVE WILLIAM
O'SULLIVAN, Individually and In His Official Capacity and
P.O.s "JOHN DOE" #1-10

                      Defendants.
-------------------------------------------------------------------------------X

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

**ECF CASE**

**15 Civ. 4631 (CBA) (VMS)**

Plaintiff BRIAN RODRIGUEZ by his attorney, Jon L. Norinsberg, Esq., complaining of the defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

3. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 and 1367.

## VENUE

4. Venue is properly laid in the Eastern District of New York under 28 U.S.C. §

1391(b), in that this is the District in which the claim arose.

## JURY DEMAND

5. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b)

## PARTIES

6. Plaintiff was at all relevant times a resident of the County of Nassau, in the State of New York.

7. Defendant, the City of New York, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8. Defendant, the City of New York, maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, the City of New York.

9. At all times hereinafter mentioned, the individually named defendants, Detective CHRISTOPHER CVITKOVIC (DET. CVITKOVIC) DETECTIVE. FILSHIE ("DET. FILSHE") AND DETECTIVE O'SULLIVAN ("DET. O'SULLIVAN"), and P.O.s "JOHN DOE" #1-10, were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

10. At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

11. Each and all of the acts of the defendants alleged herein were done by said

defendants while acting within the scope of their employment by defendant City of New York.

12. Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant City of New York.

## FACTS

13. On October 21, 2012, at approximately 6:00 A.M., defendant police officers proceeded to bang on the door of plaintiff's residence, located at 74 Third Avenue in Garden City, in the County of Nassau, and the State of New York.

14. When asked who was at the door, defendant police officers made themselves out to be "New York State Parole," knowing full well that plaintiff BRIAN RODRIGUEZ was on parole at the time.

15. Plaintiff BRIAN RODRIGUEZ's brother then opened the door.

16. Upon opening the door, defendant police officers lunged towards plaintiff BRIAN RODRIGUEZ and tackled him to the ground.

17. Plaintiff was thereafter arrested and brought to the 109th precinct in the County of Queens, in the City and State of New York.

18. Upon reaching the 109th Precinct, plaintiff was questioned at length about a robbery that took place two days prior in Queens ("Oct. 19 Incident").

19. Plaintiff BRIAN RODRIGUEZ emphatically denied any involvement in this robbery.

20. There was no physical evidence that connected plaintiff BRIAN RODRIGUEZ to the robbery.

21. There was no DNA evidence connecting plaintiff BRIAN RODRIGUEZ to the robbery.

22. There was no forensic evidence connecting plaintiff BRIAN RODRIGUEZ to the robbery.

23. There were no fingerprints connecting plaintiff BRIAN RODRIGUEZ to the robbery.

24. In sum, there was *no evidence* whatsoever connecting plaintiff BRIAN RODRIGUEZ with the Oct. 19 Incident.

25. Nevertheless, plaintiff BRIAN RODRIGUEZ was arrested in connection with the robbery, and charged not only with robbery, but with felony-murder, as the victim ultimately died of her injuries.

26. The only reason why plaintiff BRIAN RODRIGUEZ was arrested for this crime was due to defendant DET. CVITKOVIC stating that, after seeing video footage of the Oct. 19 Incident, he was "100% [certain]" that the subject in the video was plaintiff BRIAN RODRIGUEZ.

27. At the time defendant DET. CVITKOVIC made this false identification, he knew that plaintiff BRIAN RODRIGUEZ was not, in fact, the subject of the video.

28. The reason why defendant DET. CVITKOVIC made up this claim was because of his prior interactions with plaintiff BRIAN RODRIGUEZ, as set forth below.

**Det. Cvitkovic's Prior Robbery Case Against Brian Rodriguez Results in An Acquittal.**

29. In 2011, plaintiff BRIAN RODRIGUEZ was arrested and charged with two counts of robbery ("2011 Incident").

30. Defendant DET. CVITKOVIC was the lead detective in connection with this arrest.

31. On September 27, 2012, plaintiff BRIAN RODRIGUEZ went to trial on these two robbery charges.

32. On the first day of trial, both victims of the robberies that plaintiff was being accused of stated in open court that plaintiff BRIAN RODRIGUEZ was not the assailant.

33. As a result, all charges were *immediately dismissed* against plaintiff BRIAN RODRIGUEZ.

**Defendants Filshie and O'Sullivan Have Reason To Doubt Det. Cvitkovic's Veracity From The Outset.**

34. Upon learning of the Oct. 19 Incident, defendant DET. CVITKOVIC stated that the robbery was very similar to a robbery pattern that he had already investigated.

35. Defendant DET. CVITKOVIC then reviewed the video footage of the Oct. 19 Incident and told the detectives at the 109th Precinct that he was "100% that the subject in the video is Brian Rodriguez."

36. Defendant DET. CVITKOVIC knew that plaintiff BRIAN RODRIGUEZ was not the person depicted in the video footage of the Oct. 19 Incident.

37. However, defendant DET. CVITKOVIC – angry that plaintiff BRIAN RODRIGUEZ had "gotten away" with the earlier crimes – decided that he would make up for the prior acquittals by falsely identifying plaintiff BRIAN RODRIGUEZ as the subject in the video of the Oct. 19 incident.

38. Further, Defendants DET. FILSHIE and DET. O'SULLIVAN had immediate reason to doubt the veracity of defendant DET. CVITKOVIC.

39. The video of the Oct. 19 Incident shows a tall, skinny Caucasian male.

40. On the date of his arrest, October 21, 2012, plaintiff BRIAN RODRIGUEZ was listed as Hispanic, five feet, seven inches (5'7") tall, and one hundred seventy five pounds (175 lbs.).

41. In the video footage of the Oct. 19 Incident, the suspect is either clean shaven, or had light stubble.

42. In plaintiff BRIAN RODRIGUEZ's mugshot from October 21, 2012, plaintiff BRIAN RODRIGUEZ is fully bearded.

43. Further, Defendants DET. FILSHIE and DET. O'SULLIVAN were aware that defendant DET. CVITKOVIC's case against plaintiff BRIAN RODRIGUEZ had fallen apart at trial less than one month before, and that there was a distinct possibility of a vendetta against plaintiff BRIAN RODRIGUEZ.

44. Despite this plainly exculpatory evidence, defendant police officers and detectives issued a warrant for plaintiff BRIAN RODRIGUEZ's arrest.

**Plaintiff Brian Rodriguez Spends the Next Two and a Half Years On Riker's Island Awaiting Trial.**

45. After being brought to the 109th Precinct, plaintiff BRIAN RODRIGUEZ was brought to central booking and then to court for his arraignment.

46. Plaintiff BRIAN RODRIGUEZ was held without bail and remanded to custody on Riker's Island.

47. On October 23, 2012, the New York Post ran an article about the Oct. 19 Incident entitled "Freed ex-con 'strikes' again – he's arrested in near-deadly beating."

48. This article caused severe damage to plaintiff's reputation amongst his friends and family.

49. Plaintiff BRIAN RODRIGUEZ remained incarcerated on Riker's Island until May 12, 2015, when he was acquitted of all charges in a jury trial.

50. Despite being found not guilty on all counts on May 12, 2015, plaintiff BRIAN RODRIGUEZ was not released until June 2, 2015.

51. As a result of the foregoing, plaintiff sustained, *inter alia*, loss of liberty, emotional distress, lost earnings, embarrassment and humiliation and deprivation of their constitutional rights.

**FIRST CLAIM FOR RELIEF**
**DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

52. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "51" with the same force and effect as if fully set forth herein.

53. All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of law.

54. All of the aforementioned acts deprived plaintiff BRIAN RODRIGUEZ of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. §1983.

55. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all the actual and/or apparent authority attendant thereto.

56. The acts complained of were carried out by the aforementioned individual

defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

57. Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of his/her respective municipality/authority, which is forbidden by the Constitution of the United States.

## SECOND CLAIM FOR RELIEF
## FALSE ARREST UNDER 42 U.S.C. § 1983

58. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "57" with the same force and effect as if fully set forth herein.

59. As a result of defendants' aforementioned conduct, deprived plaintiff BRIAN RODRIGUEZ was subjected to an illegal, improper and false arrest by the defendants and taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated and prosecuted by the defendants in criminal proceedings, without any probable cause, privilege or consent.

60. As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, and they were put in fear for their safety, were humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

## THIRD CLAIM FOR RELIEF
## MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983

61. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "60" with the same force and effect as if fully set forth herein.

62. Defendants misrepresented and falsified evidence before the District Attorney.

63. Defendants did not make a complete and full statement of facts to the District Attorney.

64. Defendants withheld exculpatory evidence from the District Attorney.

65. Defendants were directly and actively involved in the initiation of criminal proceedings against plaintiff BRIAN RODRIGUEZ.

66. Defendants lacked probable cause to initiate criminal proceedings against plaintiff BRIAN RODRIGUEZ.

67. Defendants acted with malice in initiating criminal proceedings against plaintiff BRIAN RODRIGUEZ.

68. Defendants were directly and actively involved in the continuation of criminal proceedings against plaintiff BRIAN RODRIGUEZ.

69. Defendants lacked probable cause to continue criminal proceedings against plaintiff BRIAN RODRIGUEZ.

70. Defendants acted with malice in continuing criminal proceedings against plaintiff BRIAN RODRIGUEZ.

71. Defendants misrepresented and falsified evidence throughout all phases of the criminal proceedings.

72. Notwithstanding the perjurious and fraudulent conduct of defendants, the criminal proceedings were terminated in plaintiff's favor when all plaintiff BRIAN RODRIGEZ was acquitted of all charges buy a jury of his peers on May 12, 2015.

73. As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, and he was put in fear for his safety, was humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

**FOURTH CLAIM FOR RELIEF**
**DENIAL OF CONSTITUTIONAL RIGHT TO FAIR TRIAL**
**UNDER 42 U.S.C. § 1983**

74. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "73" as if the same were more fully set forth at length herein.

75. Defendants created false evidence against plaintiff BRIAN RODRIGUEZ.

76. Defendants forwarded false evidence and false information to prosecutors in the Queens County District Attorney's Office.

77. In creating false evidence against plaintiff, in forwarding false evidence and information to prosecutors, and in providing false and misleading testimony, defendants violated plaintiff' constitutional right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

78. As a result of the foregoing, plaintiff' liberty was restricted for an extended period of time, and they were put in fear for their safety, were humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

**FIFTH CLAIM FOR RELIEF**
**MALICIOUS ABUSE OF PROCESS UNDER 42 U.S.C. § 1983**

79. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "78" with the same force and effect as if fully set forth herein.

80. The aforementioned individual defendants issued legal process to place plaintiff under arrest.

81. The aforementioned individual defendants arrest plaintiff in order to obtain a collateral objective outside the legitimate ends of the legal process.

82. The aforementioned individual defendants acted with intent to do harm to plaintiff, without excuse or justification.

83. As a result of the foregoing, plaintiff sustained, *inter alia*, mental anguish, shock, fright, apprehension, embarrassment, humiliation, and deprivation of their constitutional rights.

## SIXTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY

84. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "83" as if the same were more fully set forth at length herein.

85. Defendants arrested and incarcerated plaintiff in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize plaintiff's liberty, well-being, safety, livelihood and constitutional rights.

86. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

87. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

88. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department constituted a deliberate indifference to the safety, well-being and constitutional rights of plaintiff.

89. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by plaintiff as alleged herein.

90. The foregoing customs, policies, usages, practices, procedures and rules of

the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by plaintiff as alleged herein.

91.     As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, plaintiff were incarcerated unlawfully.

92.     Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of plaintiff.

93.     Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of plaintiff' constitutional rights.

94.     All of the foregoing acts by defendants deprived plaintiff of federally protected rights, including, but not limited to, the right:

        A.     Not to be deprived of liberty without due process of law;

        B.     To be free from seizure and arrest not based upon probable cause;

        C.     To be free from unwarranted and malicious criminal prosecution;

        D.     Not to have cruel and unusual punishment imposed upon them; and

        E.     To receive equal protection under the law.

## FIRST CLAIM FOR RELIEF
## UNDER N.Y. STATE LAW: FALSE ARREST

95.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "94" with the same force and effect as if fully set forth herein.

96.     Plaintiff has complied with all the conditions precedent of the bringing of this action, and have complied with all provisions of the Charter of the City of New York, and the plaintiff have, prior to the bringing of this action and within ninety days after the injuries

hereinafter described were received, duly served notice upon the Corporation Counsel and the Comptroller for the City of New York of their intention to sue upon the claim set forth**.** The said claim remains unadjusted and the said Comptroller has failed and/or refused to make any adjustment thereof. Plaintiff has yet to appear for a hearing held pursuant to the General Municipal Law Section 50-h.  The instant action is being filed within one year and ninety days of the date in which plaintiff' claims accrued.

97. Defendant police officers arrested plaintiff in the absence of probable cause and without a warrant.

98. As a result of  the aforesaid conduct by defendants, plaintiff  were subjected to an illegal, improper and false arrest by the defendants and taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated and prosecuted by the defendants in criminal proceedings.

99. The aforesaid actions by the defendants constituted a deprivation of the plaintiff' rights.

**SECOND CLAIM FOR RELIEF**
**UNDER N.Y. STATE LAW: FALSE IMPRISONMENT**

100. Plaintiff repeats, reiterates and realleges  each and every allegation contained in paragraphs numbered "1" through "99" with the same force and effect as if fully set forth herein.

101. As a result of the foregoing, plaintiff were falsely imprisoned, his liberty was restricted for an extended period of time, he was put in fear for their safety, were humiliated and subjected to handcuffing, and other physical restraints.

102. Plaintiff was conscious of said confinement and did not consent to same.

103. The confinement of plaintiff was without probable cause and was not other wise privileged.

104. As a result of the aforementioned conduct, plaintiff have suffered physical and mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

### THIRD CLAIM FOR RELIEF UNDER N.Y. STATE LAW: MALICIOUS PROSECUTION

105. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "104" with the same force and effect as if fully set forth herein.

106. As a result of the foregoing, plaintiff BRIAN RODRIGUEZ was falsely imprisoned, his liberty was restricted for an extended period of time, was put in fear for his safety, was humiliated and subjected to handcuffing, and other physical restraints.

107. Plaintiff BRIAN RODRIGUEZ was conscious of said confinement and did not consent to same.

108. The confinement of plaintiff BRIAN RODRIGUEZ was without probable cause and was not otherwise privileged.

109. As a result of the aforementioned conduct, plaintiff BRIAN RODRIGUEZ has suffered physical and mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

### FOURTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

110. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "109" with the same force and effect as if fully set forth herein.

111. The aforementioned conduct was extreme and outrageous, and exceeded all reasonable bounds of decency.

112. The aforementioned conduct was committed by defendants while acting within the scope of their employment by defendant THE CITY OF NEW YORK.

113. The aforementioned conduct was committed by defendants while acting in furtherance of their employment by defendant THE CITY OF NEW YORK.

114. The aforementioned conduct was intentional and done for the sole purpose of causing severe emotional distress to plaintiff.

115. As a result of the aforementioned conduct, plaintiff suffered severe emotional distress, physical and mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

### FIFTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### NEGLIGENT HIRING/TRAINING/SUPERVISION/RETENTION

116. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "115" with the same force and effect as if fully set forth herein.

117. Defendant the City of New York owed a duty to the public at large, including but not limited to plaintiff, to exercise reasonable care in the selection, hiring and retention of all of its employees, and in particular, those employees with the job responsibility of dealing with the public at large.

118. Defendant The City of New York failed to use reasonable care when it hired defendant polices officers and detectives.

119. Defendant The City of New York failed to make reasonable inquiries into the background of defendant police officers and detectives.

120. Had defendant The City of New York used reasonable care in inquiring into the background of defendant police officers and detectives, it would have learned that they were patently unqualified to serve as police officers in the New York City Police Department.

121. As a result of the foregoing, defendant City of New York breached its duty to use reasonable care in the selection and hiring of all of its employees.

122. As a result of defendant City of New York's negligence in hiring defendant police officers and detectives, plaintiff were subjected to excessive force and to a false arrest by defendant police officers and detectives.

123. Upon information and belief, this was not the first time that defendant police officers and detectives had made false arrests against citizens of the City of New York.

124. Defendant City of New York knew, or in the exercise of reasonable care, should have known, that defendants police officers and detectives had a propensity for making false arrests against citizens of the City of New York.

125. Defendant The City of New York knew, or in the exercise of reasonable care, should have known, that defendant police officers and detectives had a propensity for engaging in grossly improper, inappropriate and unlawful conduct towards citizens of the City of New York, and then concealing such misconduct by making false accusations against such citizens.

126. Notwithstanding The City of New York's knowledge of the propensities of defendant police officers and detectives, defendant the City of New York retained defendant police officers and detectives as employees, and allowed them to continue to deal directly with the members of the public, including but not limited to, plaintiff

127. In choosing to hire, and then retain, defendant police officers and detectives, defendant City of New York breached its duty to the public at large, and to plaintiff in particular, to use reasonable care in the selection and retention of its employees.

128. Defendant City of New York was further negligent in failing to provide adequate training regarding the use of force against civilians, and in failing to adequately supervise defendants in the performance of their occupational duties.

129. As a result of the foregoing, plaintiff are entitled to compensatory damages in the sum of ten million dollars ($10,000,000.00) and is further entitled to punitive damage against the individual defendants in the sum of one million dollars ($5,000,000.00).

**WHEREFORE**, plaintiff BRIAN RODRIGUEZ demands judgment in the sum of ten million dollars ($10,000,000.00) in compensatory damages, five million dollars ($5,000,000.00) in punitive damages, plus attorney's fees, costs, and disbursements of this action.

Dated: New York, New York
       October 22, 2015

BY:      /s/
         JON L. NORINSBERG
         Jon@norinsberglaw.com
         Attorney for Plaintiff
         225 Broadway, Suite 2700
         New York, N.Y. 10007
         (212) 791-5396